IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-4

 No. COA20-795

 Filed 4 January 2022

 Montgomery County, No. 16CRS050062, 64-65, 19CRS1060

 STATE OF NORTH CAROLINA

 v.

 GLENN MADISION HOGAN, II.

 Appeal by defendant from judgments entered on or about 7 October 2019 by

 Judge V. Bradford Long in Superior Court, Montgomery County. Heard in the Court

 of Appeals 24 August 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Michael T.
 Henry, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron
 Thomas Johnson, for defendant-appellant.

 STROUD, Chief Judge.

¶1 Because the trial court did not abuse its discretion in denying defendant’s

 motion to excuse a juror for cause, we conclude there was no error in defendant’s trial.

 We remand for correction of a clerical error.

 I. Defendant’s Convictions and Issues on Appeal

¶2 Defendant was convicted by a jury of first-degree murder, conspiracy to

 commit robbery with a dangerous weapon, three counts of robbery with a dangerous
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 weapon, and three counts of first-degree kidnapping. The jury found defendant guilty

 of first-degree murder based upon four theories: malice, premeditation, and

 deliberation; torture; lying in wait; and felony murder. The trial court arrested

 judgment on the conspiracy conviction, one of the robbery convictions, and all of the

 kidnapping convictions, and entered sentences on the remaining convictions: first-

 degree murder and two counts of robbery. Defendant appeals his judgments.

 Because defendant only raises issues regarding a juror and a clerical error in one of

 his judgments, we will not recount the especially brutal and horrific factual

 background leading to his convictions.

 II. Prospective Juror

¶3 Defendant’s first argument on appeal is that “[t]he trial court reversibly erred

 by failing to excuse prospective juror Mary Smith[1] for cause where she indicated she

 might be unable to apply the presumption of innocence.”

 A. Standard of Review

 We review a trial court’s ruling on a challenge
 for cause for abuse of discretion. A trial court
 abuses its discretion if its determination is
 manifestly unsupported by reason and is so
 arbitrary that it could not have been the
 result of a reasoned decision. In our review,
 we consider not whether we might disagree
 with the trial court, but whether the trial

 1 We use a pseudonym for the juror at issue. We do so throughout the opinion without
 brackets in portions where the transcript is quoted.
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 court’s actions are fairly supported by the
 record.
 The question that the trial court must answer in
 determining whether to excuse a prospective juror for
 cause is whether the juror’s views would prevent or
 substantially impair the performance of his duties as a
 juror in accordance with his instructions and his oath.
 ....
 If the record supports the trial court’s decision that the
 juror could follow the law, then the trial court’s ruling
 should be upheld on appeal.
 ....
 Indeed, an appellate court should reverse only in the event
 that the decision of the trial court is so arbitrary that it is
 void of reason. . . . [M]erely because a prospective juror
 holds personal views that do not comport completely with
 the structure set out in N.C.G.S. § 15A–2000 does not
 disqualify that person from fulfilling his or her civic
 responsibility to serve on a jury. Moreover, the General
 Assembly’s intent is to maximize the pool of qualified
 citizens who can serve as jurors. Determinations of
 whether a juror would follow the law as instructed are best
 left to the trial judge, who is actually present during voir
 dire and has an opportunity to question the prospective
 juror. Deference to the trial court is appropriate because it
 is in a position to assess the demeanor of the venire, and of
 the individuals who compose it, a factor of critical
 importance in assessing the attitude and qualifications of
 potential jurors.

 State v. Cummings, 361 N.C. 438, 447-50, 648 S.E.2d 788, 794-96 (2007) (citations

 and quotation marks omitted).

 B. Ms. Smith’s Voir Dire

¶4 Defendant moved to strike prospective juror Ms. Smith for cause. The trial

 court denied this request. Defendant then used a preemptory challenge to remove
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 Ms. Smith. Defense counsel later noted to the trial court that he wanted to use a

 preemptory challenge on another juror, but had exhausted them, and thus he

 renewed his motion to remove Ms. Smith for cause. The trial court denied the motion.

¶5 To put the jury selection process in context, we note that this case received

 extensive coverage in the local news due to the horrific facts of the kidnapping and

 torture of the victim. Because of the pretrial publicity and seriousness of the charged

 crimes, the jury pool for this case included about 200 jurors. After excusing some

 prospective jurors for various hardships, the trial court divided the 146 remaining

 prospective jurors into two panels for voir dire. The prospective jurors were

 questioned individually, and many had prior knowledge of the case from media

 coverage or word of mouth in the community. Quite a few also knew about

 defendant’s juvenile record and reputation. Many jurors were excused for cause

 based upon their stated inability to be fair and impartial due to pretrial publicity and

 others out of concern for the “gruesome” nature of the evidence. The entire jury

 selection process took five days.

¶6 The juror in question in this case, Ms. Smith, unlike many of the prospective

 jurors, had no prior knowledge of defendant or the case. Defendant argues the trial

 court abused its discretion in failing to allow him to excuse Ms. Smith for cause

 because “she indicated she might be unable to apply the presumption of innocence.”

 During her voir dire Ms. Smith stated several times she did not know about this
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 specific case, and her father is a retired state trooper. The Court questioned her:

 THE COURT: Okay. The fact that your dad is a
 retired highway patrolman – okay? – do you think that
 would color the way you viewed the evidence in this case?

 JUROR MARY SMITH: It would.

 THE COURT: How so?

 JUROR MARY SMITH: Because I know how loyal
 my dad was and how – these men mean to him, so I would
 prefer their judgment.

 THE COURT: You think there’s a danger that you
 might give their testimony more weight than another
 person’s.

 JUROR MARY SMITH: Yes.

¶7 The questioning continued:

 THE COURT: --- okay? -- but what I think I heard
 you saying was you didn’t think you could be fair to Mr.
 Hogan because you would tend to believe a police officer’s
 testimony over someone else’s. Is that a fair summation of
 what you were saying?

 JUROR MARY SMITH: Yeah. But I would be
 willing to hear it, but it’s just, growing up in law
 enforcement your whole life, you hear all the wrong and
 bad that happens in your community, and you want justice
 for everything, so ---

 THE COURT: And I appreciate that. But here’s
 where we are: We only have a chance to ask you questions
 about it now, and what I -- what I think I hear you saying
 is, “I would do my best.” You didn’t use that phrase, but I
 think -- I think ---
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 JUROR MARY SMITH: Yeah.

 THE COURT: --- what you’re saying is – you’re
 letting us know you sort of feel like you have a
 predisposition towards wrongdoers being caught and
 corrected for their actions.

 JUROR MARY SMITH: Yes.

 THE COURT: And that -- but you would try and do
 your best to be fair in this case. Is that fair?

 JUROR MARY SMITH: Yes.

¶8 The State then questioned Ms. Smith:

 MR. NADOLSKI: I heard you say that, you know,
 because of your kind of slant on things as far as wanting
 justice for -- and -- but, you know, truthfully, I mean, that’s
 what we all want. I mean, that’s the ---

 JUROR MARY SMITH: Yeah.

 MR. NADOLSKI: --- that’s the system of
 government we live in. We’re -- that’s what justice is all
 about. So I just want to be -- just to be clear, I don’t want
 to -- you know, ultimately, you know, it’s the highest – it’s
 one of the highest civic duties we have, is to serve as jurors
 and -- and do our duty as -- so that people that are charged
 with crimes will have people in the community that will
 hear their cases and determine their guilt or innocence.
 And so it’s -- you know, it’s a longstanding thing that passes
 down from the English law. And it’s – it’s important. It
 makes our system run and makes it work. . . . .

 ....

 MR. NADOLSKI: And so the only question is, really,
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

can you -- and so if you’re sat as a juror in this case, your
job will be to hear the evidence, and then once you’ve heard
the evidence, the judge would instruct you on the law.
Then you would determine whether the defendant was
guilty or not guilty of the crimes that are charged.
 In that -- in that situation, you will hear testimony
from many witnesses, lay witnesses and law enforcement,
medical examiners, things like that. And your job will be
to gauge the credibility of those witnesses. So that the
question is: Can you do that and be fair and not let any
predispositions you have have an effect on that?
 So, for instance, you know, you use the same things
that you use in your common sense, you know ---

 JUROR MARY SMITH: Uh-huh.

 MR. NADOLSKI: --- in your everyday lives: “Does
this make sense, based on that fact? Does this make sense?
“And you have to be fair to all the witnesses that testify.

 JUROR MARY SMITH: Yeah.

 MR. NADOLSKI: Does that make a ---

 JUROR MARY SMITH: Yeah.

 MR. NADOLSKI: So I guess the question is: If a --
if an officer testified in this case and maybe he said some
things that didn’t make sense and you thought, “Well, that
doesn’t really -- that really doesn’t go with that,” “It doesn’t
really compute,” you’re not going to let the fact that just
because he’s a law-enforcement officer come into play with
that.

 JUROR MARY SMITH: No.

 MR. NADOLSKI: You’re going to ---

 JUROR MARY SMITH: No.
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 MR. NADOLSKI: You’re going to use your common
 sense ---

 JUROR MARY SMITH: Yes. Yes.

 MR. NADOLSKI: Okay. And that’s – that’s really
 what this gets down to, is: Can you do that in this case, set
 those -- set your experiences with your daddy aside ---

 JUROR MARY SMITH: Uh-huh.

 MR. NADOLSKI: And I know your daddy would
 want you to be fair in this case, too. Right?

 JUROR MARY SMITH: Yeah. Oh, yeah.

 MR. NADOLSKI: So -- all right. And so that’s the –
 that’s the real question: Can you do that? Can you just
 push that aside, say, “I’m going to consider the evidence
 that’s presented” –

 JUROR MARY SMITH: Uh-huh.

 MR. NADOLSKI: --- “I'm going to use the things
 that I use in my everyday affairs,” like the ability of a
 person to see, hear the things that they’re talking about,
 any apparent bias, things like that? And that’s just – that’s
 what ---

 JUROR MARY SMITH: Yeah.

 MR. NADOLSKI: --- you got to do. You think you
 can do that?

 JUROR MARY SMITH: I think I could, yes.

¶9 Defendant’s attorney then questioned Ms. Smith:

 MR. ROOSE: Okay. All right. Okay. Now, you
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 indicated that you would – because you grew up with law
 enforcement of course, and have a lot of respect for all those
 people and everything, you would tend to defer to their side
 of things, here. Okay. Is that ---

 JUROR MARY SMITH: No.

 MR. ROOSE: Is that right?

 JUROR MARY SMITH: Yeah, like – but like I said,
 I would, but I want to hear everything to make the right
 judgment.

 MR. ROOSE: Okay. Would – so – all right. Right
 now, one of the – one of the three cardinal principals of
 criminal law in a criminal case is that Glenn Hogan sits
 here at the defendant’s table clothed in the presumption of
 innocence. Can you presume Glenn Hogan to be innocent
 right now?

 JUROR MARY SMITH: I don’t know.

 MR. ROOSE: Don’t know if you can do that.

 JUROR MARY SMITH: Yeah, I don’t know.

¶ 10 Defendant’s counsel continued questioning Ms. Smith, followed again by the

 State:

 MR. ROOSE: But to start out, you have -- you need
 to be able to presume him to be innocent before you hear
 anything else. He doesn’t have any burden. He doesn’t
 have to prove anything. He doesn’t ---

 JUROR MARY SMITH: Okay.

 MR. ROOSE: --- have to prove his innocence. The
 burden’s 100 percent with the district attorney, here.
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 JUROR MARY SMITH: Okay.

 MR. ROOSE: And they have to prove the case
beyond a reasonable doubt.

 JUROR MARY SMITH: Okay.

 MR. ROOSE: But you don’t know if you can presume
him to be innocent at this time. Is that right?

 JUROR MARY SMITH: I guess not. I don’t know.

 MR. ROOSE: Okay. That’s all the questions I have.

 THE COURT: Yes, sir.

 MR. NADOLSKI: Can I just follow up?

 THE COURT: Yep.

 MR. NADOLSKI: And I -- this may not have been –
you may not have had clarity on this, but -- so when we talk
about this presumption of innocence, it is – the
presumption -- basically what you’ll be – he’s presumed
innocent, and he’s charged with a crime, but that – that
doesn’t mean anything. It’s just an allegation. Right?

 JUROR MARY SMITH: Uh-huh.

 MR. NADOLSKI: And the presumption follows him
until, until, you’ve heard all the evidence. And you
understand why that is. You – it’s fair -- basic fairness.

 JUROR MARY SMITH: Yeah.

 MR. NADOLSKI: Then the judge will instruct you
after you’ve heard all the evidence, and then you determine
whether the defendant is guilty or not guilty of a crime. Is
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 that ---

 JUROR MARY SMITH: Yes.

 MR. NADOLSKI: So that’s truly what you’re going
 to be asked to do. Can you ---

 JUROR MARY SMITH: Yes.

 MR. NADOLSKI: --- do that?

 JUROR MARY SMITH: Yes.

 MR. NADOLSKI: Okay.

 THE COURT: Yes, sir.

 MR. ROOSE: No further questions.

¶ 11 The voir dire concluded:

 THE COURT: Of course I remember [your father]
 Trooper [Smith]. The law presumes Mr. Hogan to be
 innocent. This is vitally important to this case.

 JUROR MARY SMITH: Uh-huh.

 THE COURT: And the law says that this protection,
 this -- however you want to view it, however you can
 envision it in your head, this shield, this garment,
 whatever it is, surrounds Mr. Hogan and is never removed
 from him unless and until the State of North Carolina
 proves he’s guilty beyond a reasonable doubt. There is no
 burden or duty of any type on Mr. Hogan. The burden rests
 on this table exclusively.
 And, you know, these are tough things to talk about.
 It’s not things we ponder in our everyday lives. I get paid
 to do this, and I don’t ponder it in my everyday life, you
 know. I’ve sat in that chair, and it’s a different feeling
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 sitting in that chair than sitting in this chair. Sitting up
 here, you’re just -- you talk in a loud voice and tell
 everybody what they’re supposed to do. When you sit over
 there, you have to think about it. Okay?
 So I need to know whether or not you can follow
 those rules, whether or not you can extend the burden --the
 -- whether or not you can hold the State to its burden of
 proof beyond a reasonable doubt and whether or not you
 can presume Mr. Hogan to be innocent and allow this
 presumption of innocence to remain shield or -- him clothed
 in this presumption of innocence unless and until the State
 proves he’s guilty beyond a reasonable doubt. Easy to say.
 It’s a little bit harder concept to wrap your mind around.
 But that’s what I need to know whether or not you can do.

 JUROR MARY SMITH: I can.

 THE COURT: Okay. Anything else, Mr. Nadolski?

 MR. NADOLSKI: No.

 THE COURT: Mr. Roose?

 MR. ROOSE: No.

¶ 12 While Ms. Smith admitted she was generally biased toward the side of law

 enforcement because her father had served as a law enforcement officer, she

 ultimately reiterated to the Court many times that she could be a fair juror, applying

 the presumption of innocence to defendant and the burden of proving guilt beyond a

 reasonable doubt to the State. While defendant primarily relies on a United

 States Supreme Court case, we recognize our own extensive case law on this issue.

 For example, in Cummings, our Supreme Court held the trial court did not abuse its
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 discretion in denying the defendant’s motion to strike a juror for cause when the

 prospective juror was a law enforcement officer and made statements regarding his

 lack of impartiality and an inability to presume the defendant was innocent, but after

 additional questioning, he ultimately stated he would be fair to this defendant, would

 follow the trial court’s instructions, and consider all of the evidence. See id., 361 N.C.

 438, 648 S.E.2d 788.

¶ 13 We also consider the context in which Ms. Smith was selected as a juror. As

 noted above, this case had extensive pretrial publicity and many prospective jurors

 had to be excused for cause based upon their prior knowledge of defendant or reports

 regarding the alleged crimes. The trial court called an especially large pool of

 prospective jurors and questioned jurors individually. Unlike many of the other

 prospective jurors, Ms. Smith had no prior knowledge of the case or defendant. We

 certainly cannot find that the trial court’s denial of defendant’s motion to strike Ms.

 Smith for cause was “so arbitrary that it is void of reason.” Cummings, 361 N.C. at

 449-50, 648 S.E.2d at 795. To the contrary, the trial court conducted the voir dire

 with great care and consideration of the particular challenges presented by this type

 of case.

¶ 14 We have reviewed the statements of Ms. Smith and are satisfied “that the

 record fairly supports the trial court’s conclusion that [the prospective juror] would

 follow the law as instructed.” Id. at 449, 648 S.E.2d at 795. We conclude there was
 STATE V. HOGAN

 2022-NCCOA-4

 Opinion of the Court

 no abuse of discretion. This argument is overruled.

 III. Clerical Error

¶ 15 Defendant’s only other argument on appeal is that “[r]emand is required to

 correct a clerical error because the trial court sentenced” defendant incorrectly on one

 of the judgments (16CRS0050065 – one count of robbery with a dangerous weapon).

 The State concedes the sentence on the judgment is in error and should be 73 to 100

 months rather than 77 to 100 months as is noted. “When, on appeal, a clerical error

 is discovered in the trial court’s judgment or order, it is appropriate to remand the

 case to the trial court for correction because of the importance that the record speak

 the truth.” State v. Smith, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008)

 (citation and quotation marks omitted). Accordingly, we remand for correction of the

 clerical error.

 NO ERROR and REMANDED.

 Judges DIETZ and COLLINS concur.